# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

HOPCo GROUP HOLDINGS, L.P.,

    Plaintiff,

v.

STEVEN D. WERNER,

    Defendant.

Case No. _____

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiff HOPCo Group Holdings, L.P. ("Group Holdings" or "Plaintiff"), by and through its undersigned counsel, alleges the following against Defendant Steven D. Werner ("Dr. Werner" or "Defendant"):

## NATURE OF THE ACTION

1. Group Holdings brings this action for Dr. Werner's repeated and several breaches of a Rollover Agreement entered into July 18, 2019 (the "Rollover Agreement").

2. In July 2019, in connection with a Merger Agreement and Transaction between The Center for Orthopedic and Research Excellence, Inc. d/b/a Healthcare Outcomes Performance Company ("HOPCO"), HOPCO's shareholders including Dr. Werner, Group Holdings, and Group Holdings' wholly-owned subsidiary HOPCo Intermediate Holdings, Inc. (the "Merger Agreement"), Dr. Werner and the other HOPCO shareholders chose to roll over proceeds from the Merger in a tax-advantaged structure and thus entered into the Rollover Agreement, where he expressly agreed to abide by the obligations therein. In particular, Dr. Werner rolled over $187,714.01 of his HOPCO stock proceeds to purchase partnership units in

Group Holdings as part of a tax-deferred transaction contemporaneous with the Merger. In consideration for these partnership units, Dr. Werner agreed to abide by the provisions set forth in the Rollover Agreement.

3. In June 2020, Dr. Werner tendered his resignation to his employer, Center for Orthopedic Research and Education, LLC d/b/a The CORE Institute ("The CORE Institute"), which is 33% owned managed by HOPCO. Shortly thereafter, Group Holdings learned that Dr. Werner had joined HonorHealth at its Phoenix Sonoran Health Medical Campus, a direct competitor of HOPCO, to perform orthopedic surgery.

4. Under the Rollover Agreement, Dr. Werner elected to roll over the substantial majority of his HOPCO stock proceeds to purchase units in Group Holdings and agreed not to "own, manage, control, participate in, or otherwise permit" his name to be used "by, consult with, render services for or otherwise assist anyone who owns, invests in, manages, controls, or engages in all or any portion of the business" that HOPCO conducts or engages within a twenty-five mile radius of any HOPCO or affiliated entities' locations for a period of three (3) years following the closing date of the Merger.

5. Dr. Werner has breached, and continues to breach, his contractual obligations under the Rollover Agreement. With a clear understanding and acknowledgment of his obligations, Dr. Werner joined HonorHealth in Phoenix Arizona, well within the proscribed geographic area under the Rollover Agreement.

6. In addition, on information and belief, Dr. Werner has solicited physician's assistant Nicolas Zastrow, surgery scheduler Kelly Hawkins, and nurse practitioner Joseph Apap, with whom he worked at The CORE Institute, to seek employment at HonorHealth following his

departure from The CORE Institute, in violation of his obligations under the Rollover Agreement.

7. As a direct result of Dr. Werner's contractual breaches, Group Holdings has incurred substantial damages for which it seeks redress, as alleged below.

## THE PARTIES

8. Plaintiff Group Holdings is a Delaware limited partnership with a principal place of business in Boston, Massachusetts and was incorporated on July 2, 2019. Group Holdings is governed by the Amended and Restated Limited Partnership Agreement ("LPA"), dated July 17, 2019. As part of the Merger, Intermediate Holdings became a 100% wholly owned subsidiary of Group Holdings.

9. Defendant Dr. Werner is an individual who, on information and belief, resides in Phoenix, Arizona. As part of the Merger and Rollover Agreement, Dr. Werner became an investor in Group Holdings.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over Group Holdings' claims in this matter pursuant to 28 U.S.C. § 1332, in that the matter in controversy is between parties that are diverse and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. This Court has jurisdiction over the parties and Group Holdings' claims in this matter pursuant to the parties' express consent to submit to the personal and subject matter jurisdiction of this Court under the Rollover Agreement. Rollover Agreement §§ 9 ("LP Agreement"), 11.1 ("Governing Law). The Rollover Agreement also provides that the

Agreement should "be governed by and construed in accordance with the domestic substantive laws of the State of Delaware." Rollover Agreement § 11.1.

12. Venue is proper in this district because Dr. Werner agreed that venue for any action concerning the Rollover Agreement, through the LPA, shall be the state or federal courts in Delaware.

## FACTUAL BACKGROUND

13. The CORE Institute has for many years delivered the best in orthopedic and neurological care through pioneering research, academics, and community service. It is a multi-disciplinary orthopedic specialty provider delivering start-to-finish services focusing on bone health, hand and upper extremity care, foot and ankle care, hip and knee care, neurology, and sports medicine. The physicians at The CORE Institute are fellowship-trained specialists in their respective fields. They are nationally recognized leaders, experts, researchers, and educators in orthopedic surgery and musculoskeletal medicine.

14. The CORE Institute began in 2005 as a three-physician practice with a mission to change the way orthopedic care was offered to their community. Driven through a commitment to excellence, innovation, and learning, The CORE Institute expanded over the next fifteen years to numerous locations across Arizona and undertook strategic partnerships with healthcare groups to provide superior orthopedic, neurological, and physical therapy care to its growing patient base.

15. Dr. Werner became an employee of The CORE Institute in July of 2011 and a stockholder in The CORE Institute on September 19, 2013.

16. The CORE Institute is professionally managed by HOPCO, which is a physician-operated healthcare outcomes management company focused on transforming the patient

experience and practice of medicine through the use of proprietary IT platforms and standardized protocols.

**I. The Merger**

17. In July 2019, new private equity investors were brought on to assist HOPCO in growing its platform nationally.

18. As part of the Merger, HOPCO became a wholly owned subsidiary of Intermediate Group, which in turn became a wholly owned subsidiary of Group Holdings.

19. As part of the Merger Agreement, a majority of the stockholders of The CORE Institute, including Dr. Werner, opted to enter into the Rollover Agreement.

**II. The Rollover Agreement**

20. Dr. Werner entered into the Rollover Agreement on July 18, 2019 in connection with the Merger.

21. In electing to enter into the Rollover Agreement, Dr. Werner (and numerous other HOPCO stockholders) accepted the opportunity to roll over the proceeds from the Merger to purchase partnership units in Group Holdings in a tax advantaged structure. As such, Dr. Werner elected to roll over $187,714.01 of the $198,293.38 in HOPCO stock proceeds to purchase partnership units in Group Holdings.

22. In consideration for these partnership units, access to business partners, trade secrets, and other Group Holdings confidential information, Dr. Werner explicitly agreed to abide by numerous contractual obligations arising under the Rollover Agreement.

23. Pursuant to Section 7.3 of the Rollover Agreement, and in exchange for participation in a tax-deferred transaction, that was highly beneficial to Dr. Werner, Dr. Werner expressly acknowledged that he had "access to trade secrets and other Confidential Information,

5

which if disclosure or used for any reason unrelated to the furtherance of [Group Holdings'] business, could unfairly and inappropriately assist in competition against [Group Holdings]." Consequently, Dr. Werner agreed that he would not, in any capacity:

- "invest in, own, manage, control, participate in, or otherwise permit [Dr. Werner's] name to be used by, consult with, render services for, or otherwise assist, in any manner" anyone that "owns, invests in, manages, controls, or engages in all or any portion of any business" that any Group Holdings-affiliated entities or subsidiaries engages in within a 25-mile radius of any Group Holdings-affiliated entities or subsidiaries for a period of twelve months following the date upon which Dr. Werner ceased all ownership of Group Holdings stock;

- Provide medical services within a 25-mile radius "of any facility owned or managed by any Group Holdings-affiliated entities or subsidiaries for a period of three-year period;" and

- "solicit, hire or engage in any capacity any employee of the Partnership or any of its Subsidiaries (or any Person who was an employee of the Partnership or any of its Subsidiaries within 9 months prior to the date such hiring or engagement occurs) or solicit or seek to persuade any employee of the Partnership or any of its Subsidiaries to discontinue such employment[.]"

24. Under the Rollover Agreement, Dr. Werner expressly acknowledged that "restrictions on [his] activities . . . are necessary, appropriate and reasonable to protect the goodwill, Confidential Information and other legitimate interests of [Group Holdings] and its Subsidiaries, from unfair and inappropriate competition[.]"

**III. Dr. Werner Departs and Solicits The CORE Institute Employees**

25. On May 28, 2020, Dr. Werner resigned via email. At such time, he did not provide any information as to his plans for the future and whether or where he would be employed.

26. As part of his Employment Agreement, Dr. Werner agreed to a 60-day transition period. His last day as an employee of The CORE Institute was July 27, 2020.

27. On June 2, 2020, HOPCO reminded Dr. Werner of his continued obligations arising under the Rollover Agreement.

28. Upon information and belief, Dr. Werner began his employment with HonorHealth in Phoenix Arizona as an orthopedic surgeon on or shortly after July 27, 2020.

29. HonorHealth describes itself as "a locally owned, nonprofit, integrated health system" comprised of "more than 400 physicians and other providers serving patients in more than 70 locations across the Valley."[1] It's Sonoran Crossing location, where Dr. Werner is currently employed, provides an array of services related to orthopedic outpatient and inpatient care, hip and knee surgery and replacement, and treatments for a "range of conditions, including degenerative diseases of the hip and knee such as osteoarthritis, rheumatoid arthritis, bursitis, and tendonitis.[2]

30. HonorHealth is a direct competitor of The CORE Institute and other Group Holdings-affiliated entities and subsidiaries.

---

[1] https://www.honorhealth.com/company/medical-group; https://www.honorhealth.com/company/history.
[2] https://www.honorhealth.com/locations/specialty-care/honorhealth-orthopedics-sonoran-crossing.

31. On information and belief, on or before July 16, 2020, Dr. Werner solicited, hired, and/or sought to persuade multiple former The CORE Institute employees to discontinue their employment with The CORE Institute and to seek employment with HonorHealth. At least one of these individuals has since resigned from The CORE Institute and joined Dr. Werner at HonorHealth.

## COUNT I: BREACH OF CONTRACT

### (NON-COMPETITION CLAUSE)

32. Plaintiff repeats and realleges the factual allegations in Paragraphs 1 through 31 above.

33. Dr. Werner breached and continues to breach Section 7.3 of the Rollover Agreement by, and without Group Holdings' prior permission or consent, undertaking employment with HonorHealth, in competition with HOPCO and The CORE Institute.

34. The actions of Dr. Werner constitute material breaches of the Rollover Agreement.

35. As a result of Dr. Werner's breaches, Group Holdings has and continues to be harmed.

## COUNT II: BREACH OF CONTRACT

### (NO-HIRE CLAUSE)

36. Plaintiff repeats and realleges the factual allegations in Paragraphs 1 through 35 above.

37. Dr. Werner breached Section 7.3 of the Rollover Agreement by, and without Group Holdings' prior permission or consent, soliciting, hiring and/or seeking to persuade multiple former The CORE Institute employees to discontinue their employment with The

CORE Institute and to seek employment with HonorHealth. At least one of these individuals has since resigned from The CORE Institute and joined Dr. Werner at HonorHealth.

38. The actions of Dr. Werner constitute material breaches of the Rollover Agreement.

39. As a result of Dr. Werner's breaches, Group Holdings has been harmed.

## COUNT III: BREACH OF CONTRACT

### (CONFIDENTIALITY CLAUSE)

40. Plaintiff repeats and realleges the factual allegations in Paragraphs 1 through 39 above.

41. Dr. Werner breached Section 7.1 of the Rollover Agreement by, and without Group Holdings' prior permission or consent, disclosing confidential information with HonorHealth.  Specifically, on February 19, 2020, Dr. Werner emailed a spreadsheet containing confidential financial and productivity information of The CORE Institute's physician assistants. Upon information and belief, Plaintiff alleges that Dr. Werner shared other confidential information belonging to Plaintiff or The CORE Institute in an effort to further his employment prospects at HonorHealth or to further his efforts to recruit members of his team at The CORE Institute to join him at HonorHealth.

42. The actions of Dr. Werner constitute material breaches of the Rollover Agreement.

43. As a result of Dr. Werner's breaches, Group Holdings has been harmed.

## COUNT IV: BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

44. Plaintiff repeats and realleges the factual allegations in Paragraphs 1 through 43 above.

45. A covenant of good faith and fair dealing is implied in every contract in Delaware. By the actions described herein, including but not limited to his breach of his contractual restrictive covenant obligations, Dr. Werner has breached the implied covenant of good faith and fair dealing applicable to all contracts.

46. As a direct and proximate result of Dr. Werner's breaches of the implied covenant of good faith and fair dealing, Group Holdings have suffered and continue to suffer damages and harm.

## PRAYER

WHEREFORE, Plaintiff prays that the Court enter final judgment and grant the following relief against Defendant:

A. Declare that Dr. Werner breached and continues to breach the Rollover Agreement;

B. Enter a preliminary and permanent injunction: (i) prohibiting Dr. Werner from participating in any business which engages in a competing business in any geographic area in which Group Holdings or any of its affiliated entities for a period of three (3) years following the closing date of the Merger (as those terms are defined in the Rollover Agreement); and (ii) compelling the return of property and confidential information belonging to Plaintiff or The CORE Institute;

  C. Enter an award of actual damages against Dr. Werner, including compensatory and consequential damages, in an amount according to proof, plus interest which continues to accrue thereon;

  D. Award prejudgment and post-judgment interest;

  E. Award attorneys' fees and expenses; and

  F. Such other and further review as the Court deems just and equitable.

*Of Counsel*:

Koray J. Bulut
Hayes P. Hyde
GOODWIN PROCTER LLP
Three Embarcadero Center
28th Floor
San Francisco, California 94111
(415) 733-6000
kbulut@goodwinlaw.com
hhyde@goodwinlaw.com

Dated: September 14, 2020

PRICKETT, JONES & ELLIOTT, P.A.

*/s/ Eric J. Juray*
Bruce E. Jameson (#2931)
Eric J. Juray (#5765)
Mary S Thomas (#5072)
1310 King Street
Box 1328
Wilmington, DE 19899
(302) 888-6500
bejameson@prickett.com
ejjuray@prickett.com
msthomas@prickett.com

*Attorneys for Plaintiff*